IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Keith Rodall, | ) | C/A No. 3:13-207-CMC-PJG |
|               Plaintiff, | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| City of Columbia, | ) | |
|               Defendant. | ) | |

The plaintiff, Keith Rodall, filed this employment case alleging racial discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq.; violation of 42 U.S.C. § 1983; violation of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, et seq.; and state law violations of the South Carolina Payment of Wages Act, S.C. Code Ann § 41-10-10, et seq.; against his employer, the City of Columbia. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the City of Columbia's motion for summary judgment. (ECF No. 29.) Rodall filed a response in opposition (ECF No. 33; Additional Attachments, ECF No. 34), and the City filed a reply (ECF No. 38). Having reviewed the parties' submissions and the applicable law, the court finds that the defendant's motion should be granted.

## BACKGROUND

The following facts are either undisputed or are taken in the light most favorable to Rodall, to the extent they find support in the record. Rodall is a fifteen-year veteran of the Columbia Fire Department. Rodall challenges the City's promotional testing system as racially discriminatory. He



further claims that he was retaliated against for complaining about it, and also that his overtime pay was improperly calculated.

Rodall, who is African American, participated in the fire department's promotional testing process in 2011 in an attempt to advance to Battalion Chief.

**The City's Promotion Process.**  To advance within the fire department, firefighters must undergo a formal assessment process which includes an internal selection committee and a panel of evaluators from other fire departments.  Beginning in 2007, William Tomes with the University of South Carolina Institute for Public Service and Policy Research took over the responsibilities for validating and administering the promotion process for Battalion Chiefs.  Tomes and his team conducted a validation study which was used in the promotion process in 2009, 2011, and 2012.  The study involved a job analysis, review of job descriptions, interviews with employees, and consultation with a racially diverse selection committee consisting of senior fire department staff. As a result, candidates are assessed for certain critical knowledge, skills, and abilities (KSAs).

One component of the promotional process involves a supplemental application, requiring candidates to answer four of six questions.  Responses are graded for grammar (worth 20% of the grade) by the USC Institute team and for content (worth 80%) by the Department's selection committee.  To advance to the next step of the process, a candidate must achieve a score of 70 on the supplemental application.  Grading is anonymous and the graders do not consult among themselves.  Graders utilize a rubric that is based on rank specifications and KSAs.

If successful, the candidate then participates in an "in basket" exercise based on KSAs which is designed to test the applicant's ability to organize, prioritize, and delegate employment responsibilities.  Again, a rubric is utilized and grading is anonymous.



The third stage of the process requires a candidate to interview with a panel of subject matter experts selected from other fire departments. The USC Institute team selects the questions and provides a rubric to the panel members. All applicants are asked the same questions. Finally, if the candidate achieves a passing score, he or she must undergo a fire ground simulation in which a computer program generates a scenario and the candidate must simulate managing a fire scene. Role players in a separate room respond by radio to the candidate's instructions. All applicants face the same simulation scenario.

Candidates who successfully complete all four stages of the promotional process are interviewed by the fire chief, who asks the same general questions of each. Applicants are then ranked by total score, and selections for vacant Battalion Chief positions are made based on the applicant's position on the promotion list.

**Rodall's claims.** Rodall asserts that he complained about the fairness of the promotional testing after failing to pass the supplemental application phase in 2011. After that, he was cited for various work-related violations. He also claims that the City has not properly paid him for overtime.

## DISCUSSION

### A.     Summary Judgment Standard

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "[T]he mere existence of *some* alleged



factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* [dispute] of *material fact*." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (emphasis in original) (internal quotation marks and citation omitted).  A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor.  Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002).  The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms.  See id. at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

**B.     Burden Shifting Framework in Employment Cases**

A plaintiff may demonstrate discrimination through direct or circumstantial evidence.  A plaintiff may produce circumstantial evidence and proceed under the McDonnell Douglas burden-shifting framework.  Warch v. Ohio Casualty Ins. Co., 435 F.3d 510, 520 (4th Cir. 2006); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  Pursuant to this framework, once



the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010) (Title VII). The defendant's burden "is a burden of production, not persuasion." Reeves, 530 U.S. at 142. Once a defendant meets this burden by producing affidavits or testimony demonstrating a legitimate, nondiscriminatory reason, "the McDonnell Douglas framework—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*." Id. (internal quotation marks and citations omitted).

In other words, if the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was " 'not its true reason[], but [was] a pretext for discrimination.' " Merritt, 601 F.3d at 294 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). Accordingly, the plaintiff's burden of demonstrating pretext " 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination.' " Merritt, 601 F.3d at 294 (quoting Burdine, 450 U.S. at 256) (alterations in original); see also Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 319 (4th Cir. 2005) (Title VII & 42 U.S.C. § 1981). To meet this "merged" burden, the employee may prove by a preponderance of the evidence that the decision maker's affidavit is untrue or that the employer's proffered explanation is unworthy of credence. Burdine, 450 U.S. at 256.

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves, 530 U.S. at 148. However, "if the record conclusively reveal[s]



some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," summary judgment is appropriate. Id. Accordingly, the court must evaluate "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." Id. at 148-49. "Notwithstanding the intricacies of proof schemes, the core of every [discrimination] case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination." Merritt, 601 F.3d at 294-95.

C.     **Rodall's Claims**

   1.     **Title VII**

       a.     **Retaliation**

As an initial matter, the City correctly points out that Rodall failed to administratively exhaust his claim for retaliation. "Before filing suit under Title VII, a plaintiff must exhaust [his] administrative remedies by bringing a charge with the EEOC." Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000); see also 42 U.S.C. § 2000e-5(f)(1). Exhaustion of administrative remedies is a statutory prerequisite to properly invoke the jurisdiction of the federal court. See, e.g., Jones v. Calvert Group, Ltd., 551 F.3d 297, 300 (4th Cir. 2009) (stating that "a failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim"); Davis v. N.C. Dep't of Corr., 48 F.3d 134, 140 (4th Cir. 1995) (stating that "that receipt of, or at least entitlement to, a right-to-sue letter is a jurisdictional prerequisite"); see also 42 U.S.C. § 2000e-5(f).

 

In the employment discrimination context, courts have interpreted statutory requirements to exhaust administrative remedies to mean that each discrete incident of discriminatory treatment must be administratively exhausted. Martinez v. Potter, 347 F.3d 1208, 1210 (10th Cir. 2003) (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002)); Jones v. U.P.S., Inc., 502 F.3d 1176, 1186 (10th Cir. 2007). The allegations contained in the administrative charge of discrimination generally limit the scope of any subsequent judicial complaint. King v. Seaboard Coast Line R.R., 538 F.2d 581, 583 (4th Cir. 1976) (stating that a subsequent civil suit "may encompass only the 'discrimination stated in the [EEOC] charge itself or developed in the course of a reasonable investigation of that charge' ") (quoting Equal Employment Opportunity Comm'n v. Gen. Elec. Co., 532 F.2d 359, 365 (4th Cir. 1976)); see also Smith, 202 F.3d at 247 ("A plaintiff's EEOC charge defines the scope of her subsequent right to institute a civil suit."). Only those claims stated in the initial administrative charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent lawsuit. Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996) (affirming the district court's dismissal of some of the plaintiff's claims because they were outside the scope of her original EEOC charge and were therefore time barred).

Courts have specifically held that when a claim of retaliation could have been raised in the original EEOC charge, such a claim must be administratively exhausted or it is procedurally barred. See Riley v. Tech. & Mgmt. Servs. Corp., Inc., 872 F. Supp. 1454, 1459-60 (D. Md. 1995), aff'd, 79 F.3d 1141 (4th Cir. 1996) (finding that where an act of retaliation occurred prior to the filing of the EEOC charge and the plaintiffs failed to check the "retaliation" box, the retaliation claims were not administratively exhausted); see also McMillan v. S.C. Dep't of Corr., 16 F. Supp. 2d 635, 646

(D.S.C. 1997) (holding that where a charging party could have raised allegations of retaliation at the time she filed her charge, exhaustion of administrative remedies with respect to that charge is required), aff'd, 153 F.3d 721 (4th Cir. 1998). In fact, the United States Court of Appeals for the Fourth Circuit has found that where a plaintiff fails to check the "retaliation" box on the EEOC form and the narrative portion of the charge makes no mention of retaliation, such a claim should be dismissed for failure to exhaust administrative remedies. See Miles v. Dell, Inc., 429 F.3d 480, 492 (4th Cir. 2005); see also Davenport v. Wal-Mart Stores East, L.P., C/A No. 3:08cv119, 2008 WL 1984259 (E.D. Va. May 6, 2008) (finding that the plaintiff's retaliation claim was unexhausted where the plaintiff failed to check the "retaliation" box and failed to allege retaliation anywhere in her EEOC charge).

Here, Rodall, like the plaintiffs in many of the cases cited above, did not check the "retaliation" box on his EEOC Charge and made no allegation of retaliation in the narrative section. Accordingly, he has failed to properly invoke the court's jurisdiction with respect to any retaliation claim. See, e.g., Jones, 551 F.3d at 300; Davis, 48 F.3d at 140.

  **b.**  **Remaining Title VII Claims**

Turning to Rodall's remaining claims, Rodall alleges several forms of discriminatory treatment by the City. First, he contends that he was required to complete all required credentials prior to being permitted to take the written test for promotion. Second, he claims that he was disqualified for promotions due to shifting certification requirements. Third, he complains that white employees were given more overtime and pay raise opportunities than African Americans. Fourth,

he claims that he was not allowed to choose shifts.[1]  (Pl.'s Mem. Opp'n Mot. Summ. J. at 7, ECF No. 33 at 7.)

The elements of a *prima facie* case of discrimination based upon racially disparate treatment are:  (1) membership in a protected class; (2) adverse employment action; (3) satisfactory job performance; and (4) different treatment from similarly situated employees outside of the protected class.  See Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) (citing White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004)).  With regard to a claim of discrimination based on an alleged failure to promote, the *prima facie* case generally requires the plaintiff to show: (1) he is a member of a protected class; (2) his employer had an open position for which he applied or sought to apply; (3) he was qualified for the position; and (4) he was rejected under circumstances giving rise to an inference of unlawful discrimination.  Evans v. Technologies Applications & Service Co., 80 F.3d 954, 960 (4th Cir. 1996); see also Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 268 (4th Cir. 2005).

To the extent Rodall asserts disparate treatment based upon the instances of alleged adverse action identified in his memorandum, he cannot establish a *prima facie* case, as he presents no evidence that any similarly situated person outside of his protected class was treated differently. Specifically, he has not identified any comparators that are similarly situated to him in all relevant respects.  See Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992) (Title VII & ADEA)

---

[1] Rodall also complains that he was accused of and issued multiple instances of discipline. However, because it appears that Rodall raises the disciplinary issues solely in connection with retaliation (as opposed to any disparate discipline claim alleging that white employees engaging in similar conduct were treated less severely), any claim based on the disciplinary measures is not properly before the court for the reasons set forth above.



(defining "similarly situated");[2] see also Haywood v. Locke, 387 F. App'x 355, 359 (4th Cir. 2010) (stating that "plaintiffs are required to show that they are similar in all relevant respects to their comparator"). Although Rodall relies on affidavits from two African-American firefighters formerly employed by the City, neither of those affidavits identifies any specific white employee who was treated more favorably in any manner raised by Rodall. (See Lloyd Aff., ECF No. 34-6; Sulton Aff., ECF No. 34-7) (both discussing in general terms that white employees were treated better than African Americans over the course of their careers). Moreover, even if a specific white comparator had been identified, Rodall fails to offer any evidence as to whether such an individual would be similarly situated to Rodall so as to permit a valid comparison. See, e.g., Causey v. Balog, 162 F.3d 795, 801-02 (4th Cir. 1998) (holding that where race- and age-based animosity could be shown through differential treatment of similarly situated employees, plaintiff's conclusory statements that his employer "treated him less favorably than younger black and white employees of similar rank," "without specific evidentiary support, cannot support an actionable claim"); Corley v. Louisiana ex rel. Div. of Admin., Office of Risk Mgmt., 816 F. Supp. 2d 297, 316 (M.D. La. 2011) ("In the context of a race discrimination claim where the plaintiff alleges that employees who were not members of the protected class received more lenient discipline for similar violations, the plaintiff must come forward with specific evidence of comparators who were similarly situated.") (citing Lee v. Kansas City Southern Ry. Co., 574 F.3d 253, 259-60 (5th Cir. 2009)).

---

[2] The Fourth Circuit has not issued a published case on this point; however, the following unpublished cases have cited with approval the Mitchell decision: Atkins v. Holder, 529 F. App'x 318, 321 (4th Cir. 2013); Haywood v. Locke, 387 F. App'x 355, 359 (4th Cir. 2010); Forrest v. Transit Mgmt. of Charlotte, Inc., 245 F. App'x 255 (4th Cir. 2007); Heyward v. Monroe, 166 F.3d 332, 1998 WL 841494, at *2 (4th Cir. 1998); Edwards v. Newport News Shipbuilding & Dry Dock Co., 166 F.3d 1208, 1998 WL 841567, at *3 (4th Cir. 1998).



Rodall's failure to promote claim is also deficient because he cannot show that the City's legitimate, nondiscriminatory reason is a pretext for discrimination. Although Rodall apparently initially relied on the contention that Christopher Kip should not have been promoted, he wholly fails to refute the City's showing that Kip was qualified for the position of Battalion Chief and makes no attempt to argue that Rodall's qualifications were demonstrably superior to Kip's. See Heiko v. Colombo Savings Bank, F.S.B., 434 F.3d 249, 261-62 (4th Cir. 2006) ("When a plaintiff asserts job qualifications that are similar or only slightly superior to those of the person eventually selected, the promotion decision remains vested in the sound business judgment of the employer. But where . . . the plaintiff has made a strong showing that his qualifications are demonstrably superior, he has provided sufficient evidence that the employer's explanation may be pretext for discrimination.") (internal citations omitted). In fact, the unrefuted evidence shows that Rodall did not receive a passing score on his test.

### 2. § 1983 Claim

Rodall's § 1983 claim appears to be based on a theory that the City's promotional testing system had a negative disparate impact on African Americans; however, such a claim cannot be brought under that statute. See Foster v. Wyrick, 823 F.2d 218, 221-22 (8th Cir. 1987). Moreover, to establish disparate impact, a plaintiff must show that the employer uses a particular employment practice that causes a disparate impact on one of the bases protected by federal law. Lewis v. City of Chicago, 560 U.S. 205, 212 (2010) (internal quotation marks and citation omitted); see also Ricci v. DeStefano, 557 U.S. 557, 577-78 (2009) (discussing requirements to establish a disparate impact claim). "The evidence in these 'disparate impact' cases usually focuses on statistical disparities,

rather than specific incidents, and on competing explanations for those disparities." Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 987 (1988).

> Proof of disparate impact requires reliable and accurate statistical analysis performed by a qualified expert. As the Supreme Court has noted, "the inevitable focus on statistics in disparate impact cases" results in a very "high standard[ ] of proof" that can be difficult for plaintiffs to meet. Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 992, 999 (1988). Merely pointing to "statistical disparities in the employer's work force" is not sufficient; the plaintiff must provide "statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group." Id. at 994.

EEOC v. Freeman, 961 F. Supp. 2d 783, 786 (D. Md. 2013). Rodall has presented no expert testimony providing a reliable and accurate statistical analysis. (Tomes Dep. at 75:19-77:10, ECF No. 29-19 at 39-41 (testifying that the sample size is too small for a valid analysis)). Accordingly, he cannot establish a claim based on disparate impact.

### 3. Wage Claims

Rodall's claims under the Fair Labor Standards Act and the South Carolina Payment of Wages Act are apparently based on his allegation that he is owed overtime pay because the City failed to pay him one and half times the regular rate of pay for each hour worked over forty hours. (See Am. Compl. ¶¶ 43-45, 47-49, ECF No. 15 at 9.) However, the FLSA does not mandate what Rodall seeks. In fact, the FLSA and its regulations contain provisions specifically addressing firefighters like Rodall who are compensated on a fourteen-day pay schedule.[3] See 29 U.S.C.

---

[3] Notably, a co-worker of Rodall who brought his own lawsuit based largely on the same claims asserted here inquired of the federal Department of Labor about the calculation of overtime pay. The Department of Labor confirmed that the City's policy correctly compensated him for overtime. See Capone v. City of Columbia, C/A No. 3:12-3369-CMC-PJG (Letter, ECF No. 37-7; Capone Dep. 16:6-17:8, ECF No. 38 at 10-11).



§ 207(k)(2); 29 C.F.R. § 553.230(c).[4]  Additionally, despite Rodall's contention to the contrary, the claims he purports to assert under the South Carolina Payment of Wages Act are preempted by the FLSA or are otherwise unavailable under that Act.  See Anderson v. Sara Lee Corp., 508 F.3d 181, 194 (4th Cir. 2007); Nimmons v. RBC Ins. Holdings (USA), Inc., C/A No. 07-2637, 2007 WL 4571179 (D.S.C. Dec. 27, 2007); (see also Def.'s Mem. Supp. Mot. Summ. J. at 17-18, ECF No. 29-1 at 17-18).

### RECOMMENDATION

Rodall did not properly exhaust his retaliation claim and therefore has not invoked the court's jurisdiction with regard to any claim based upon retaliatory conduct.  Moreover, he has not presented evidence substantiating his assertion that the City's promotion process is discriminatory or that he was treated differently than any person outside his protected class.  Further, his wage claims fail as a matter of law.  Accordingly, the court recommends that the defendant's motion for summary judgment (ECF No. 29) be granted.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

December 2, 2014
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

---

[4] In his memorandum in opposition, Rodall does not address these provisions or in any way show that they are inapplicable.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).